**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | 2:25-CV-534-JCM-BNW |
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| 519803.53164 USDT and 1135.508 XMR that are associated with transaction hashes 0x1ac48e72bb2fd83ad60a0f3f0cea5036e3bdcfe593a4a9be53c12c44a6197421, 0xbc0e435002aba822c6355e4f7571fe9b0d822e17e448c7262b2c9114ec325228, and 0x3e989f0de45e39c89e86032acc59e33c5161d492dde3c7b09ea19408ba74c931 sent to Gate.io USDT address 0x6BC5C2661D75f0Ced80754D3C7bD651f1d60f736 and held in the name of Avalanche Bridge, | |
| Defendant. | |

**I. FACTS**

On August 18, 2023, a company (Victim A) located in Las Vegas, Nevada, was the victim of a cyber-attack.

The unknown subjects gained unauthorized access into Victim A's network and stole sensitive company data.

The unknown subjects demanded Victim A to pay the unknown subjects in bitcoin (BTC)[1] and threatened that the data would be publicly released if Victim A did not comply.

The unknown subjects initially demanded $30 million USD worth of BTC be paid by Victim A or the sensitive data would be publicly released.

---

[1] A glossary of cryptocurrency-related terms is provided in Exhibit 1 to the Complaint, ECF No. 1, p. 13-18.

Victim A negotiated the extortion payment down to approximately $15 million USD. The unknown subjects promised to delete the stolen data after they received the payment.

Victim A paid the extortion payment in two separate purchases of BTC. Through subsequent analysis (using a commercially available crypto-tracing tool), law enforcement traced the BTC transactions sent from Victim A to a point known in crypto currency transactions as a bridge, in this case extortion payment wallets Avalanche Bridge. The property was traced based on the "Illegal Proceeds In, First Out" (or last-in, first-out) accounting principle, which assumes that the last or most recent incoming assets are the first expended or sent out. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir. 1986) (government can establish prima facie case for forfeiture by relying on the "last-in, last-out" approach or the "last-in, first-out" approach.)[2]

A detailed summary flowchart attached as Exhibit 2 to the Complaint[3] describes the transfer of the illegal proceeds from the extorted payments made by Victim A to the unknown subjects.

When the illegal proceeds were transferred from the extorted payments made by Victim A to the unknown subjects, BTC fees, in the form of a minute portion of the BTC, may have been paid in small amounts as each transaction progressed.[4]

Victim A paid the unknown subjects through two separate transactions. On September 11, 2023, Victim A sent the first payment in the amount of approximately 297

---

[2] Also known as the "'drugs-in, first-out' rule. As the name suggests, this rule posits that when withdrawals are made, tainted money leaves the account first." *United Sates v. Dillion*, No. 1:16-cr-00037-BLW, 2022 WL 2105974, *4 (D. Ida. Jun. 10, 2022) (citing *Banco*, 797 F.2d at 1158

[3] Complaint, ECF No. 1, p. 19.

[4] Bitcoin (BTC) fees are the costs that users pay to have their transactions processed by miners on the Bitcoin network. These fees incentivize miners to include transactions in the blocks they create. The amount of the fee can vary based on several factors, including network congestion and the transaction size. Network congestion occurs when the Bitcoin network is congested (i.e., there are more transactions waiting to be processed than available space in the blocks), fees increase because users compete to have their transactions confirmed quickly. Transaction size fees are calculated based on the size of the transaction in bytes, rather than the amount of Bitcoin being transferred. Larger transactions (in terms of data size) will require higher fees. *See also* https://youtu.be/waP7n8crMhg?si=SAPuglPJD5AqE3HU.

BTC to BTC address bc1qmrcc0dtdn3c785phrncf5wtz98q9qy8ndpd5ev (Extortion Wallet 1).

On October 11, 2023, Victim A paid the second payment in the amount of approximately 277 BTC. As instructed to do so by the unknown subjects, Victim A sent the second payment to BTC address bc1q5ft3et8h0qp4ppk6hjjhfxmmy32egzgvrgtwsn (Extortion Wallet 2).

Prior to these transfers, Extortion Wallet 1 and Extortion Wallet 2 did not have a balance, nor did either wallet receive any additional payments. Therefore, there was no co-mingling of any previous cryptocurrencies. Upon information and belief, Extortion Wallet 1 and Extortion Wallet 2 appeared to have been opened only for the purpose of receiving these two payments.

On September 12, 2023, the unknown subjects who had access/ownership of Extortion Wallet 1 sent approximately 125 BTC (of the initially deposited 297 BTC) from Extortion Wallet 1 to bc1qy43glppnqfrey5yt97xv7fyrcn0a04npfwtef5 (Transfer Wallet 1). Prior to this transfer, Transfer Wallet 1 did not have a balance, nor did it receive any additional payments. Therefore, there was no co-mingling of any previous cryptocurrencies. Upon information and belief, Transfer Wallet 1 appeared to have been opened only for the purpose of receiving the transfer of Victim A's first payment.

On January 19, 2024, the unknown subjects who had access/ownership of Extortion Wallet 2 and Transfer Wallet 1 combined the BTC in Extortion Wallet 2 and Transfer Wallet 1 into the BTC address bc1qpy24cr5lukg33cpt3mx9xx3368mu4x2znnswt4 (Combined Wallet 1): approximately 125 BTC was sent from Transfer Wallet 1 and approximately 277 BTC was sent from Extortion Wallet 2. Prior to this transfer, Combined Wallet 1 did not have a balance, nor did it receive any additional payments. Therefore, there was no co-mingling of any previous cryptocurrencies. Upon information and belief, Combined Wallet 1 appeared to have been opened only for the purpose of receiving the transfer of Victim A's first and second payments.

/ / /

The unknown subjects who had access/ownership of Combined Wallet 1 then transferred all the cryptocurrencies in Combined Wallet 1 to the Avalanche Bridge BTC address bc1q2f0tczgrukdxjrhhadpft2fehzpcrwrz549u90 (Avalanche Wallet 1) via two separate transactions by the unknown subjects.

On January 19, 2024, at 07:57 (UTC), Avalanche Wallet 1 received approximately 125 BTC from Combined Wallet 1.

On the same day, at 22:36 (UTC), Avalanche Wallet 1 received approximately 277 BTC from Combined Wallet 1.

As a result of these transactions, Avalanche Wallet 1 received a total amount of approximately 402 BTC.

On January 19, 2024, the FBI contacted Ava Labs, Inc., and requested it to voluntarily freeze the 402.41203181 BTC sent to Avalanche Wallet 1.

Ava Labs, Inc., agreed to voluntarily freeze the 277.56327614 BTC transferred from Extortion Wallet 2 to Avalanche Wallet 1 (which went to Combined Wallet 1 before Avalanche Wallet 1), until service of a civil forfeiture seizure warrant. However, Ava Labs, Inc., was not able to voluntarily freeze the 125 BTC transferred from Extortion Wallet 1 to Avalanche Wallet 1 (which went to Combined Wallet 1 before Avalanche Wallet 1) because the 125 BTC had already been transferred from Avalanche Wallet 1.

On January 19, 2024, an unknown actor transferred the 125 BTC from Extortion Wallet 1 that was now in Avalanche Wallet 1 through the Avalanche Bridge to the wallet 0x97937B9CF687379322E54A8DA35d5D2b243857E6 (BTCB Wallet). The approximate 125 BTC was valued at $5,152,669.48 USD. Prior to this transfer, the BTCB Wallet did not have a balance. A more detailed overview is found in Exhibit 3.[5]

Between January 20, 2024, and January 21, 2024, cryptocurrency totaling in the amount of $3,185,995.35 USD was sent to wallet 0x1934d0D0CbF872Ff11cDb859de D6Dd6c5C7cbC1e (AVAX Wallet 1) from the BTCB Wallet. Prior to this transfer, AVAX Wallet 1 did not have a balance.

---

[5] Complaint, ECF No. 1, p. 20.

On January 21, 2024, cryptocurrency totaling in the amount of $2,198,220.27 USD was sent to wallet 0xA3631164d97ec60407DFe79b91b19C8eF83ADABe (AVAX Wallet 2) from AVAX Wallet 1. Prior to this transfer, AVAX Wallet 2 did not have a balance.

On January 22, 2024, at 23:06 UTC, cryptocurrency totaling in the amount of $699,045.50 USD was sent to wallet 0x4C526de3f37Da24d2F21155222374633036fc619 (AVAX Wallet 3) from AVAX Wallet 2. AVAX Wallet 3 had a previous balance of $131.67 USD prior to this transaction.

On January 22, 2024, at 23:47 UTC, cryptocurrency totaling in the amount of $699,059.36 USD was sent to wallet 0xe7eCA93471d1105947038f6A927C1E03c43D67E9 (AVAX Wallet 4) from AVAX Wallet 3. AVAX Wallet 4 had a previous balance of $10.10 USD prior to the transaction.

AVAX Wallet 3 had a remaining balance of $138.78 USD. There were no other transactions after the transfer from AVAX Wallet 2 to AVAX Wallet 3 or before the transfer from AVAX Wallet 3 to AVAX Wallet 4.

Between January 22, 2024, and January 23, 2024, cryptocurrency totaling in the amount of $690,755.00 USD was sent to wallet 0x198a65D7AC0e785Ab99A2c671b41a534dBa72f44 (Stargate Wallet 1) from AVAX Wallet 4. Prior to this transfer, Stargate Wallet 1 did not have a balance.

AVAX Wallet 4 had a remaining balance of $5,862.897 USD. There were no other transactions after the transfer from AVAX Wallet 3 to AVAX Wallet 4 or before the transfer from AVAX Wallet 4 to Stargate Wallet 1.

On January 23, 2024, cryptocurrency totaling in the amount of $690,901.68 (519845.30160479 USDT and 1135.51517101 XMR) was sent to Gate.io wallet 0x6BC5C2661D75f0Ced80754D3C7bD651f1d60f736 (Gate.io Wallet) from Stargate Wallet 1. These cryptocurrencies were sent in three separate transactions: 0x1ac48e72bb2fd83ad60a0f3f0cea5036e3bdcfe593a4a9be53c12c44a6197421, 0xbc0e435002aba822c6355e4f7571fe9b0d822e17e448c7262b2c9114ec325228, and 0x3e989f0de45e39c89e86032acc59e33c5161d492dde3c7b09ea19408ba74c931.

Stargate Wallet 1 had a remaining balance of .021445 USDT and 10.0415 MATIC.

On January 24, 2024, the FBI contacted Gate.io and requested it to voluntarily freeze the 519845.30160479 USDT and 1135.51517101 XMR sent to the Gate.io Wallet. On February 4, 2024, Gate.io confirmed the cryptocurrency were voluntarily frozen in the Gate.io Wallet 1. The Gate.io Wallet 1 contains 519803.53164 USDT and 1135.508 XMR. Based on the amount of funds in the wallet, and the fact that Gate.io froze these funds, it is unlikely that there was a balance in Gate.io Wallet 1 prior to this transaction.

## II. PROCEDURE

On March 21, 2025, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the 519803.53164 USDT and 1135.508 XMR that are associated with transaction hashes 0x1ac48e72bb2fd83ad60a0f3f0cea5036e3bdcfe593a4a9be53c12c44a6197421, 0xbc0e435002aba822c6355e4f7571fe9b0d822e17e448c7262b2c9114ec325228, and 0x3e989f0de 45e39c89e86032acc59e33c5161d492dde3c7b09ea19408ba74c931 sent to Gate.io USDT address 0x6BC5C2661D75f0Ced80754D3C7bD651f1d60f736 and held in the name of Avalanche Bridge (519803.53164 USDT and 1135.508 XMR et al.) (defendant property):

  a. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(2)(C), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).
  b. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(2)(C), a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).
  c. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(5)(A), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).
  d. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(5)(A), a specified unlawful

  activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

e. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(7), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

f. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(7), a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

g. is any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or any property traceable to such property, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

h. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1956(a)(1)(B)(i), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

i. is any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, or any property traceable to such property, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

j. is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1957, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

On March 31, 2025, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 3, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 4.

Pursuant to the Order, ECF No. 3, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 1, the Order, ECF No. 3, the Summons and Warrant, ECF No. 4, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Under Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Lloyd D. George United States Courthouse, 333 Las Vegas Boulevard South, Las Vegas, NV 89101, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on Daniel D. Hollingsworth, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 3; Summons and Warrant, ECF No. 4.

On July 14, 2025, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 8.

/ / /

/ / /

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from April 2, 2025, through May 1, 2025. Notice of Filing Proof of Publication, ECF No. 5.

On April 24, 2025, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Victim A, c/o Corporation Service Company, Registered Agent, at 112 North Curry Street by regular and certified return receipt mail. Notice of Filing Service of Process – Mailing, ECF No. 7-1, p. 3-37, 40-42.

On April 24, 2025, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Victim A, c/o Chief Legal Officer, by regular and return receipt mail. Notice of Filing Service of Process – Mailing, ECF No. 7-1, p. 3-35, 38, 43-45.

On April 24, 2025, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Victim A by regular and certified return receipt mail. Notice of Filing Service of Process – Mailing, ECF No. 7-1, p. 3-35, 39, 46-48.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On July 28, 2025, the United States filed a Motion for Entry of Clerk's Default against the 519803.53164 USDT and 1135.508 XMR et al. and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 9.

On August 12, 2025, the Clerk of the Court entered a Default against the 519803.53164 USDT and 1135.508 XMR et al. and all persons or entities who may claim

/ / /

an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 10.

### III. THE REQUIREMENTS FOR DEFAULT WERE MET

#### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny

/ / /

relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

### B. The Forfeiture Requirements for Default Were Met.

#### a. Judgment Sought

Under Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for Forfeiture.

#### b. Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the 519803.53164 USDT and 1135.508 XMR et al. and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 9. The Clerk entered the Default as requested. ECF No. 10.

#### c. Notice

Under Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published Notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. Notice of Filing Proof of Publication, ECF No. 5.

Under Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. Notice of Filing Service of Process – Mailing, ECF No. 7.

#### d. Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statute under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); Complaint, ECF No. 1.

11

e. Status of Potential Claimants

No person or entity has filed a claim, and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

a. The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) (brackets added), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

d. The Amount of Money at Stake

The value of the defendant property was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable under 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.

*United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of extortion and money laundering in exchange or intending to exchange moneys, negotiable instruments, securities, cryptocurrency, or other things of value. The money at stake is the tainted cryptocurrency related to a completed or contemplated illegal transactions in violation of 18 U.S.C. § 1030(a)(2)(C), 1030(a)(5)(A),

and 1030(a)(7); 18 U.S.C. § 1956(a)(1)(B)(i); and 18 U.S.C. § 1957, and proceeds traceable to the violations.

      e.  <u>There Are No Possible Disputes of Material Fact</u>

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    i.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(2)(C), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

    ii.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(2)(C), a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

    iii.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(5)(A), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

    iv.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(5)(A), a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

    v.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(7), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

      vi.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1030(a)(7), a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

      vii.    is any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or any property traceable to such property, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

      viii.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1956(a)(1)(B)(i), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

      ix.    is any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, or any property traceable to such property, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

      x.    is any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1957, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

    f.    <u>Default Was Not the Result of Excusable Neglect</u>

The record shows the potential claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice and failed to file a claim and an answer to the Complaint. There is no evidence of excusable neglect.

/ / /

      g. <u>Public Policy Does Not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimants did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the claimant and potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

**IV. JUDGMENT**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to all persons or entities who may claim an interest in the 519803.53164 USDT and 1135.508 XMR et al., and a Final Judgment of Forfeiture as to the 519803.53164 USDT and 1135.508 XMR et al.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against all persons or entities who may claim an interest in the 519803.53164 USDT and 1135.508 XMR et al.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the 519803.53164 USDT and 1135.508 XMR et al.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that all persons or entities who may claim an interest in the defendant property have forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the defendant property to the United States.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby, forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the defendant property shall exist in any other party.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

Date: 9/2/2025

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk